**3RC & COMPANY, INC., Appellant/Plaintiff**

**v.**

**BOYNES TRUCKING SYSTEM, INC., BOYNES GROUP, BREEZE SHIPPING, INC., JAMES BOYNES, AND JOANNA BOYNES, Appellees/Defendants**

S. Ct. Civil No. 2015-0016

Supreme Court of the Virgin Islands

July 23, 2015

545

546

CLIVE C. RIVERS, ESQ., Law Offices of Clive Rivers, St. Thomas, USVI, *Attorney for Appellant.*

RICHARD P. BOURNE-VANNECK, ESQ., Law Offices of Richard P. Bourne-Vanneck, St. Thomas, USVI, *Attorney for Appellees.*

CABRET, *Associate Justice*; WILLOCKS, *Designated Justice*; and HOLLAR, *Designated Justice.*[1]

## OPINION OF THE COURT

(July 23, 2015)

CABRET, *Associate Justice.* 3RC & Company, Inc., appeals from a Superior Court order denying its motion for a preliminary injunction against Boynes Trucking System, Inc., Boynes Group, Breeze Shipping, Inc., James Boynes, and Joanna Boynes (collectively "Boynes Trucking"), for the alleged violation of a joint-venture agreement. 3RC argues that the Superior Court erred in denying the preliminary injunction without holding an evidentiary hearing. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

3RC filed a complaint in the Superior Court on December 31, 2014, alleging that Boynes Trucking violated a joint-venture agreement it

---

[1] Chief Justice Rhys S. Hodge and Associate Justice Ive Arlington Swan are recused from this matter. The Honorable Harold W.L. Willocks, Administrative Judge of the Superior Court of the Virgin Islands, and the Honorable Brenda J. Hollar, a retired Judge of the Superior Court of the Virgin Islands, are designated to sit in their places pursuant to 4 V.I.C. § 24(a).

entered into with 3RC in February 2009 to operate a business transporting petroleum from St. Croix to St. Thomas. Under this agreement, 3RC supplied the capital and secured the necessary property and equipment, while Boynes Trucking paid the operating costs of the business and served the clients. In fulfilling its end of the agreement, 3RC secured $1.5 million in funding, including a $900,000 mortgage loan from Banco Popular de Puerto Rico. But Boynes Trucking began to fall behind in paying the operating costs seven months into the arrangement, including · the payments on the mortgage loan, and stopped paying altogether in 2011. As a result, Banco Popular brought an action to foreclose on the residence of 3RC Vice President Roan Creque, the property used as collateral for the mortgage loan.

3RC also moved for a temporary restraining order and a preliminary injunction to prevent Boynes Trucking from continuing to violate the joint-venture agreement, seeking the appointment of a receiver, as well as an accounting of the joint venture's assets. In support of its motion, 3RC asserted that it was likely to succeed on the merits and was likely to suffer irreparable harm in the absence of an injunction if Boynes Trucking continued to violate the joint-venture agreement and Creque's property faced foreclosure as a result. 3RC insisted that the injunction would not harm Boynes Trucking and that the injunction would be in the public interest because "[t]he public is best served when parties honor contractual terms." Along with this motion, 3RC submitted an affidavit from Creque; the minutes of a February 25, 2009 meeting between Creque, on behalf of 3RC, and James Boynes and Joanna Boynes, on behalf of Boynes Trucking; and the complaint in Banco Popular's foreclosure action.

Without holding a hearing, and before Boynes Trucking filed a response to 3RC's motion, the Superior Court denied the temporary restraining order and preliminary injunction in a January 8, 2015 order. 3RC filed its notice of appeal on February 7, 2015.

## II. JURISDICTION

■ This Court has jurisdiction over "[i]nterlocutory orders of the Superior Court of the Virgin Islands . . . granting, continuing, modifying, refusing or dissolving injunctions." 4 V.I.C. § 33(b)(1). Because 3RC appealed the Superior Court's January 8, 2015 order denying the preliminary injunction within 30 days as required by 4 V.I.C. § 33(d)(5),

we have jurisdiction over this appeal, *Yusuf v. Hamed*, 59 V.I. 841, 846 (V.I. 2013) (citing *First Am. Dev. Group/Carib, LLC v. WestLB AG*, 55 V.I. 594, 600-01 (V.I. 2011)), and we may review the Superior Court's denial of the preliminary injunction even as the underlying action remains pending in the Superior Court. *Marco St. Croix, Inc. v. V.I. Hous. Auth.*, 62 V.I. 586, 589 (V.I. 2015) (citing *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 554 (V.I. 2012)); *Tip Top Constr. Corp. v. Gov't of the V.I.*, 60 V.I. 724, 730 (V.I. 2014).

## III. DISCUSSION

In refusing to issue the preliminary injunction, the Superior Court held that it could deny the motion without holding an evidentiary hearing because 3RC's submissions were "deficient" in showing a likelihood of success on the merits and a likelihood of irreparable harm without an injunction. 3RC insists on appeal that the Superior Court abused its discretion in denying the motion on the submissions alone, and was instead required to hold an evidentiary hearing so that 3RC could present evidence in support of the motion. Before reviewing the Superior Court's decision to deny the injunction without holding a hearing, we must first resolve the appropriate standard for the Superior Court to apply in ruling on a motion for a preliminary injunction under Virgin Islands law.

### A. Preliminary Injunctions

■ This Court's precedent establishes that four factors are relevant to deciding a motion for a preliminary injunction:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Marco St. Croix, Inc.*, 62 V.I. at 590 (quoting *Yusuf*, 59 V.I. at 841). "[T]he party seeking an injunction[ bears] the burden of proof as to all four factors." *Appleyard v. Gov. Juan F. Luis Hosp. & Med. Ctr.*, 61 V.I. 578, 591 (V.I. 2014). But as the Superior Court stated in this case, this Court "has not settled whether a movant for preliminary injunctive relief must meet all four factors sequentially, or [whether] a sliding-scale test, wherein a strong

550

showing on one factor may decrease the weight assessed to other factors, is the best rule for the Virgin Islands."

This Court first recognized the split in authority on this issue in *Yusuf.* As we outlined there, this Court borrowed these injunction factors from the United States Court of Appeals for the Third Circuit. *Yusuf,* 59 V.I. at 847 n.3. But the Third Circuit subsequently adopted a sequential test "requiring the moving party to fully satisfy each of the four injunction factors." *Id.* "This sequential test is at odds with . . . other . . . courts, which apply different variations of a 'sliding-scale test,' allowing the moving party to obtain an injunction even where the probability of success on the merits is low if the court determines that the moving party's likelihood of irreparable harm is great and the nonmoving party's likelihood of irreparable harm is very low." *Id.*

In *Yusuf,* we did not need to determine which injunction standard is most appropriate for the Virgin Islands since the moving party in that case "satisfied the more stringent sequential test by establishing all four preliminary injunction factors." *Id.* We have taken this same position in many cases since, noting that this issue remains unresolved, but finding that it would be inappropriate to resolve the issue in those cases for various reasons. *See, e.g., Marco St. Croix, Inc.,* 62 V.I. at 590 n.2 (declining to address this issue where the moving party failed to make out any showing of likelihood of success); *Appleyard,* 61 V.I. at 591-92 (declining to address this issue where none of the injunction factors were met); *Tip Top Constr. Corp.,* 60 V.I. at 732 n.3 (declining to address this issue where, as in *Yusuf,* all four injunction factors were satisfied).

But as this Court has noted, "independent decisions of [the Superior Court] improve the quality" of this Court's decisions. *Gov't of the V.I. v. Connor,* 60 V.I. 597, 604 (V.I. 2014). And now that we have the benefit of a comprehensive examination of this issue from the Superior Court in *SBRMCOA, LLC v. Morehouse Real Estate Invs., LLC,* 62 V.I. 168, 179-187 (V.I. Super. Ct. 2015) — in addition to the commentary on this issue in a number of other Superior Court decisions[2] — this is the

---

[2] *See, e.g., Pate v. Gov't of the V.I.,* 62 V.I. 271, 283 n.17 (V.I. Super. Ct. 2015); *Joseph v. Joseph,* Super. Ct. Civ. No. 188/2004 (STX), 2015 V.I. LEXIS 43, *2-4 (V.I. Super. Ct. Apr. 23, 2015) (unpublished); *Police Benevolent Ass'n v. Gov't of the V.I.,* Super. Ct. Civ. No. 490/ 2014 (STT), 2014 V.I. LEXIS 115, *12 (V.I. Super. Ct. Dec. 29, 2014) (unpublished); *Pate v. Gov't of the V.I.,* Super. Ct. Civ. No. 479/2014 (STT), 2014 V.I. LEXIS 112, *8 n.24 (V.I.

appropriate time to examine this issue and determine the proper injunction standard under Virgin Islands law.

■ As the Superior Court explained in *SBRMCOA*, at the outset we must apply the framework outlined by this Court in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011). In *Banks* and later cases, this Court held that when addressing issues of Virgin Islands common law for the first time, this Court — and where not bound by this Court's precedent, the Superior Court — must "engage in a three-factor . . . analysis: first examining which common law rule Virgin Islands courts have applied in the past; next identifying the rule adopted by a majority of courts of other jurisdictions; and then finally — but most importantly — determining which common law rule is soundest for the Virgin Islands." *In re L.O.F.*, 62 V.I. 655, 661 n.6 (V.I. 2015) (quoting *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 757 (V.I. 2014)); *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (V.I. 2014). Thus, we must examine these factors in order to determine the appropriate standard to adopt through our inherent authority to shape the common law. *Banks*, 55 V.I. at 980; 4 V.I.C. § 32(b); *Bryan v. Fawkes*, 61 V.I. 416, 455-56 (V.I. 2014).

"The Superior Court has not uniformly applied a standard for [weighing] the four preliminary injunction factors. Some cases clearly employ the 'sequential injunction test,' while others use variations of the 'sliding-scale,' balancing the four factors." *SBRMCOA*, 62 V.I. at 182 & nn. 39, 40 (collecting cases). Nor have state courts adopted a uniform standard — in fact, different states characterize and define their injunction standards in such varying terms (ranging from two-factor sliding-scale tests to six-factor sequential tests) that "a majority rule cannot be determined." *Id.* at 185-186 & nn. 56-60 (collecting cases).[3]

---

Super. Ct. Dec. 11, 2014) (unpublished); *Appleyard v. Gov. Juan F. Luis Hosp. & Med. Ctr.*, Super. Ct. Civ. No. 282/2014 (STX), 2014 V.I. LEXIS 56 (V.I. Super. Ct. July 28, 2014) (unpublished); *Bryan v. Fawkes*, 62 V.I. 19 (V.I. Super. Ct. 2014); *Barshinger v. Legislature of the V.I.*, Super. Ct. Civ. No. 024/2011 (STT), 2014 V.I. LEXIS 99, *10 (V.I. Super. Ct. Nov. 10, 2014) (unpublished).

[3] Although *SBRMCOA* also closely examined recent federal courts of appeals decisions, these federal decisions applied the United States Supreme Court's decision in *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008), and so they are not as useful to our analysis as state supreme court decisions. While federal courts of appeals are split on what *Winter* requires, *SBRMCOA*, 62 V.I. at 184 (citing *Yusuf*, 59 V.I. at

Turning to the most important factor of the analysis, we conclude that the soundest rule for the Virgin Islands is to maintain the injunction factors first outlined by this Court in *Petrus*, 56 V.I. at 554, and we agree with the Superior Court's conclusion in *SBRMCOA* that "a variation of the sliding-scale test" is the soundest rule for the Virgin Islands. 62 V.I. at 186. Yet we ultimately adopt a formulation of the sliding-scale test that is slightly different from that articulated in *SBRMCOA*, in order to provide the Superior Court with greater latitude in exercising its equitable authority.

■ In contrast to legal remedies like money damages, injunctive relief is an equitable remedy. *Id.* at 179 & n.18. "The distinction between equitable and legal remedies at common law derives from the division between courts of law and courts of equity in ancient England." *Cacciamani & Rover Corp. v. Banco Popular*, 61 V.I. 247, 252 n.3 (V.I. 2014); *see also* Rachel A. Weisshaar, *Hazy Shades of Winter: Resolving the Circuit Split over Preliminary Injunctions*, 65 VAND. L. REV. 1011, 1018 (2012) ("The creature we now recognize as a preliminary injunction evolved, like so much of American jurisprudence, from English origins."). "Despite the fact that the Superior Court of the Virgin Islands — like almost all modern American courts — exercises both equitable and legal authority, the division between law and equity remains meaningful to defining the remedies available in a particular action." *Cacciamani*, 61 V.I. at 252 n.3 (citing *Tutein v. Arteaga*, 60 V.I. 709, 716 & n.4 (V.I. 2014)).

■ Because "[a] court of equity has traditionally had the power to fashion any remedy deemed necessary and appropriate to do justice in [a] particular case," a court has a great deal more flexibility in considering equitable remedies than it does in considering legal remedies. *Kalloo v. Estate of Small*, 62 V.I. 571, 584 (V.I. 2015) (quoting *United States v. Price*, 688 F.2d 204, 211 (3d Cir. 1982)). In light of this fact, we agree with the Superior Court that the application of a strict, sequential multi-factor test would be entirely inconsistent with this "hallmark of

847 n.3), we need not comment on that split here. The proper injunction standard in Virgin Islands courts is purely a matter of local law, and so regardless of what *Winter* mandated as a matter of federal procedural law, it is not binding on this Court or the Superior Court — in the same way such a ruling does not bind a state court or prevent it from adopting a different injunction standard as a matter of state law. *See Bryan*, 61 V.I. at 439 (citing *Better Bldg.*, 60 V.I. at 756 n.9 & *Hughley v. Gov't of the V.I.*, 61 V.I. 323, 337-38 (V.I. 2014)).

equity jurisdiction." *SBRMCOA*, 62 V.I. at 186 (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 51, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) (Ginsburg, J., dissenting)). Furthermore, because courts of equity developed these remedies in order to provide relief that was unavailable in courts of law, "[i]t is axiomatic that equitable relief is only available where there is no adequate remedy at law." *Cacciamani*, 61 V.I. at 252 (quoting *Mitsubishi Int'l Corp. v. Cardinal Textile Sales*, 14 F.3d 1507, 1518 (11th Cir. 1994)).

▮ This is why a party seeking injunctive relief must demonstrate that the injunction is necessary to avoid "certain and imminent harm for which a monetary award does not adequately compensate" — in other words, harm without an adequate legal remedy. *Yusuf*, 59 V.I. at 854 (internal quotation marks and citation omitted). And because "the preservation of the court's power to render a meaningful decision after trial on the merits [is] a basic principle of preliminary injunction law," *WarnerVision Entm't Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir. 1996), we agree with those courts — both state and federal — that have held that a party moving for a preliminary injunction must demonstrate primarily that irreparable harm is likely without the injunction. *See, e.g., Winter*, 555 U.S. at 22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is likely in the absence of an injunction."); *Boone Creek Properties, LLC v. Lexington-Fayette Urban Cnty. Bd. of Adjustment*, 442 S.W.3d 36, 39 (Ky. 2014) ("A finding of irreparable harm is an essential prerequisite for the issuance of a temporary injunction."); *Aqleh v. Cadlerock Joint Venture II, L.P.,* 299 Conn. 84, 10 A.3d 498, 506 (2010) ("In general, a court may, in its discretion, exercise its equitable power to order a temporary injunction . . . upon a proper showing by the movant that if the injunction is not granted he or she will suffer irreparable harm for which there is no adequate remedy at law."); Bethany M. Bates, *Reconciliation After Winter: The Standard for Preliminary Injunctions in Federal Courts*, 111 COLUM. L. REV. 1522, 1524-25 (2011) ("Historically, the main prerequisite to obtaining injunctive relief was a finding that plaintiff is being threatened by some injury for which he has no adequate legal remedy." (internal quotation marks and footnote omitted)).

▮ But "[i]rreparable injury [alone] is not enough to support equitable relief. There also must be a plausible claim on the merits." *Marco St. Croix, Inc.*, 62 V.I. at 590 n.2 (quoting *Hoosier Energy Rural Elec.*

554

*Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009)). So in addition to showing that it is likely to suffer irreparable harm without an injunction, the moving party must also make "at least *some* showing that [it] is likely to succeed on the merits" in moving for a preliminary injunction. *Id.* (emphasis in original). Accordingly, "[t]he issuance or denial of a preliminary injunction requires an evaluation in combination of the moving party's claim of injury and its chance of success on the merits." *Commonwealth v. Cnty. of Suffolk*, 383 Mass. 286, 418 N.E.2d 1234, 1235 (1981); *see also District of Columbia v. Reid*, 104 A.3d 859, 877 (D.C. 2014) ("[T]he Superior Court was empowered to grant a preliminary injunction upon a finding of 'either a high probability of success and some injury, or vice versa.'" (quoting *In re Estate of Reilly*, 933 A.2d 830, 837 (D.C. 2007))).

As a result, in some cases, the showing on the merits may be as minimal as simply making out a prima facie case if the showing on the moving party's likelihood of irreparable harm is strong enough — and the likelihood that the injunction would cause irreparable harm to the nonmoving party is low enough — to outweigh the weaker showing on the merits. *See, e.g., Nuuanu Valley Ass'n v. City & Cnty. of Honolulu*, 119 Haw. 90, 194 P.3d 531, 547 (2008) ("[T]he more the balance of irreparable damage favors issuance of the injunction, the less the party seeking the injunction has to show the likelihood of success on the merits."); *Cnty. of Suffolk*, 418 N.E.2d at 1235 ("If there is a substantial risk of irreparable harm to the moving party, it must be balanced against any similar risk to the other party in the light of the chance of each party to succeed on the merits."); *Hoosier Energy*, 582 F.3d at 725 ("How strong a claim on the merits is enough depends on the balance of harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief.").[4]

---

[4] *Howell Pipeline Co. v. Terra Res., Inc.*, 454 So. 2d 1353, 1357 (Ala. 1984) (citing 43 C.J.S. *Injunctions* § 30 (1978)); *Smith v. Arizona Citizens Clean Elections Comm'n*, 212 Ariz. 407, 132 P.3d 1187, 1191 (2006) (en banc) ("The greater and less reparable the harm, the less the showing of a strong likelihood of success on the merits need be. Conversely, if the likelihood of success on the merits is weak, the showing of irreparable harm must be stronger."); *Lee v. Envt'l Pest & Termite Control, Inc.*, 271 Ga. 371, 516 S.E.2d 76, 78 (1999) ("A trial court may issue an interlocutory injunction to maintain the status quo until the final hearing if, by balancing the relative equities of the parties, it would appear that the equities favor the party

On the other hand, "[a]lthough the primary reason for granting a preliminary injunction is to prevent irreparable harm, this factor is less decisive where the likelihood of success on the merits is very strong." *District of Columbia v. Greene*, 806 A.2d 216, 223 (D.C. 2002) (citing *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925, 104 U.S. App. D.C. 106 (D.C. Cir. 1958)). Where the moving party makes out a very strong showing on the merits — for example a clear and convincing one[5] — injunctive relief may still be appropriate even where the moving party's showing of "certain and imminent harm for which a monetary award does not adequately compensate" is much weaker, so long as the nonmoving party's likelihood of irreparable harm is similarly very low. *Yusuf*, 59 V.I. at 854; *see also Allen v. Prime Computer, Inc.*,

seeking the injunction."); *M.H. v. Montana High Sch. Ass'n*, 280 Mont. 123, 929 P.2d 239, 247 (1996) ("There must also be a showing that, absent a preliminary injunction, the applicant would suffer harm which could not be adequately remedied after a trial on the merits and, therefore, a preliminary injunction is necessary to maintain the status quo and minimize harm to the parties."); *Waste Mgmt. of N.J., Inc. v. Morris Cnty. Mun. Utilities Auth.*, 433 N.J. Super. 445, 80 A.3d 1169, 1174 (2013) ("This less rigid approach . . . permits injunctive relief preserving the status quo even if the claim appears doubtful when a balancing of the relative hardships substantially favors the movant.").

[5] In *SBRMCOA*, the Superior Court characterized the moving party's burden as requiring "clear and convincing evidence." 62 V.I. at 187. The Superior Court only mentioned this standard once, and it is unclear where it came from — it could perhaps even be merely a misstatement — although it does appear that one of the cases the Superior Court cited used this standard. *Id.* at 185 n.56 (citing *1650 Realty Assocs., LLC v. Golden Touch Mgmt., Inc.*, 101 A.D.3d 1016, 956 N.Y.S.2d 178, 180 (2012)). But such a demanding evidentiary standard is inappropriate as a general rule at the preliminary-injunction stage. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) ("The equitable nature of the proceeding mandates that the court's approach be flexible enough to encompass the particular circumstances of each case. Thus, an effort to apply [a single standard] to all cases with mathematical precision is misplaced."). With regard to the likelihood of success specifically, this Court explained in *Yusuf* that "[i]n order to show a reasonable probability of success on the merits, [the moving party does not have to] show that [it] will actually prevail on the merits at trial, or that [its] success is more likely than not, only that [it] has a reasonable chance, or probability, of winning." 59 V.I. at 849. And under the sliding-scale standard, the Superior Court may grant an injunction with an even weaker showing on the merits than that articulated in *Yusuf* if the Superior Court concludes that the moving party has made a strong enough showing on the other three factors to nonetheless establish "a clear showing that [it] is entitled to [injunctive] relief." *Id.* at 847; *see also Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (a trial court may "grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction").

540 A.2d 417, 421 (Del. 1988) ("[A] strong showing of [probable] success on the merits may compensate for a weak showing of irreparable harm.").

█ Finally, with regard to the public interest, this Court indicated in *Yusuf* that this factor will typically favor the moving party "if [it] demonstrates both a likelihood of success on the merits and irreparable injury." 59 V.I. at 858 n.11 (quoting *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994)); *see also Marco St. Croix, Inc.*, 62 V.I. at 592 (the public interest weighed against issuing the injunction where the moving party failed to establish a likelihood of success and the injunction would have risked the loss of federal grant money); *Tip Top Constr. Corp.*, 60 V.I. at 727-28 (the public interest weighed in favor of the injunction where the dispute involved the award of a contract on a highway project without following the proper procurement process); *Yusuf*, 59 V.I. at 857-59 (affirming the Superior Court's finding that the public interest weighed in favor of the injunction when the moving party satisfied the other factors and the continued employment of 600 Virgin Islanders was at stake).

█ In light of these considerations, we hold that the moving party still has the burden of making some showing on all four injunction factors. But in considering whether to grant or deny the preliminary injunction, the, Superior Court must evaluate the moving party's showing on all four factors under a sliding-scale standard. In conducting this sliding-scale analysis, the Superior Court must make findings on each of the four factors and determine whether — when the factors are considered together and weighed against one another — the moving party has made "a clear showing that [it] is entitled to [injunctive] relief." *Yusuf*, 59 V.I. at 847. With this standard in mind, we turn to 3RC's motion for a preliminary injunction.

## B. 3RC's Motion for a Preliminary Injunction

3RC argues that because the Superior Court denied the injunction without holding a hearing, 3RC never had the opportunity to make the required showing on the four injunction factors. We disagree.

█ "While this Court reviews the Superior Court's overall decision to grant or deny an injunction for [an] abuse of discretion," *Appleyard*, 61 V.I. at 584 (citing *Petrus*, 56 V.I. at 554), the Superior Court's decision in this case — summarily denying the injunction without an evidentiary

hearing — was in essence a holding that 3RC failed as a matter of law to make any showing that injunctive relief would be appropriate in this case, a conclusion we review *de novo. Accord Joseph v. Bureau of Corr.*, 54 V.I. 644, 649 (V.I. 2011) (this Court reviews the dismissal of a pleading for failure to state a claim *de novo*); *see also Rivera-Moreno v. Gov't of the V.I.*, 61 V.I. 279, 312 (V.I. 2014) ("[T]he substance and function of a Superior Court order controls over the form.") (citing *In re Drue*, 57 V.I. 517, 527-28 (V.I. 2012)).

■ Typically, "it is appropriate — and necessary — for the trial judge to make findings of fact in deciding a preliminary injunction." *Yusuf*, 59 V.I. at 853; *see also Wessinger v. Wessinger*, 56 V.I. 481, 488 (V.I. 2012) ("[T]he Superior Court was required to make findings of fact when it imposed the injunction, and it abused its discretion by failing to do so."). This, of course, requires the Superior Court to hold an evidentiary hearing. *Boynes v. Transp. Servs. of St. John, Inc.*, 60 V.I. 453, 465 (V.I. 2014) (the Superior Court erred in "never conduct[ing] an evidentiary hearing to create a record from which to resolve the disputed issues of fact"). "If witnesses are not heard the trial court will be left in the position of preferring one piece of paper to another," *Sims v. Greene*, 161 F.2d 87, 88 (3d Cir. 1947), and thus "[i]t is a rare preliminary injunction that can correctly be denied without a hearing." *Sch. Dist. of Wilkinsburg v. Wilkinsburg Educ. Ass'n*, 542 Pa. 335, 667 A.2d 5, 8 n.7 (1995); *see also W & W Holdings, Inc. v. Vill. at Henderson Point Owners Ass'n*, 503 So. 2d 286, 288 (Miss. 1987) ("[A] hearing is normally required on a motion for a preliminary injunction."); *cf. Rivera-Moreno*, 61 V.I. at 314 ("An evidentiary hearing . . . is not necessary if the parties' filings reveal absolutely no factual disputes."). This is one of those rare cases.

In its motion for a preliminary injunction, 3RC argued that it was likely to succeed on the merits because "the actions of [Boynes Trucking] are in violation of the joint venture agreement" and Virgin Islands law, and that 3RC was entitled to an accounting. With regard to the irreparable harm it would suffer without an injunction, 3RC argued that the loss of its $1.5 million investment in the joint venture and the loss of the collateral it used to secure those funds would constitute irreparable harm. The only evidence submitted with this motion was an affidavit from Creque making these same statements about the loss of 3RC's investment and the existence of a joint venture, the minutes of a February 2009 meeting between 3RC and Boynes Trucking, and the complaint in the foreclosure

action brought by Banco Popular against Creque. The motion made only passing reference to what harm Boynes Trucking would suffer if the injunction was issued, and asserted simply that the public interest "is best served when parties honor contractual terms."

 The Superior Court held that this motion was insufficient to support a claim for injunctive relief because the loss of 3RC's investment in the joint venture could be adequately remedied by money damages, making injunctive relief unavailable. 3RC's argument challenging this holding consists of a single sentence, stating that the Superior Court "failed to recognize that [3RC] asked the court to declare the rights of the parties, [to] stop [Boynes Trucking] from wasting away the assets of the joint venture, and [to] order an accounting to stop [Boynes Trucking] from self-dealing." 3RC fails to cite a single authority in support of its conclusory assertion that these alleged harms are the type that money damages cannot adequately remedy after the conclusion of the trial proceedings. *See* Weisshaar, 65 VAND. L. REV. at 1018 ("[T]he basic purpose of a preliminary injunction is to protect the movant from irreparable injury that would occur before a full trial took place."); *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."). Because of this failure, 3RC has waived any challenge to the Superior Court's holding that 3RC failed to make out a claim of irreparable harm. V.I.S.CT.R. 22(m); *Yusuf*, 59 V.I. at 856 n.10; *Allen v. HOVENSA, L.L.C.*, 59 V.I. 430, 440 n.1 (V.I. 2013) (where a party's "entire argument . . . consists of a single sentence, 'unaccompanied by some effort at developed argumentation,' [it is] waived for purposes of appeal" (quoting *Bernhardt v. Bernhardt*, 51 V.I. 341, 345-46 (V.I. 2009))).

██ ██ Even if 3RC had not waived this issue, we agree with the Superior Court that 3RC's showing of irreparable harm was insufficient to support a preliminary injunction. When the moving party's "loss is a matter of simple mathematic calculation, [it] fails to establish irreparable injury for preliminary injunction purposes." *Yusuf*, 59 V.I. at 854 (citation, alteration, and internal quotation marks omitted). 3RC made no arguments and submitted no evidence to suggest that the loss of its investment is anything more than a simple contract dispute involving

money damages. Without some showing of irreparable harm, injunctive relief is inappropriate.

With regard to 3RC's showing on the merits, 3RC alleged in its complaint that it entered into a joint-venture agreement with Boynes Trucking in February 2009 that "was later reduced to writing." But instead of producing this written agreement, 3RC submitted the minutes of a February 25, 2009 meeting between representatives for 3RC and Boynes Trucking where "[t]here was discussion regarding the formation of a joint venture company for the purpose of paying monthly overhead," but "[b]y unanimous vote the plan was tabled permanently." So instead of submitting evidence showing that it was likely to succeed on its claim that Boynes Trucking violated the terms of the joint-venture agreement, 3RC submitted evidence that undermined the allegations of its complaint.

■ Further, even though a joint-venture agreement can exist without a writing, "the Virgin Islands Code incorporates the Uniform Partnership Act of 1997" to govern partnerships and joint ventures in the Virgin Islands. *Yusuf*, 59 V.I. at 849-50 (citing 26 V.I.C. §§ 1-274); *id.* at 852 n.6 (explaining that the creation of partnerships and joint ventures are governed by the same standard (quoting UNIF. PARTNERSHIP ACT 1997 § 202 cmt. 2)). Under the Uniform Partnership Act, "in the absence of a written . . . agreement," a partnership or joint venture can be shown by evidence of "the express or implied intent of the parties," "joint control and management of the business," the sharing of the profits and losses, and "a combination of property, skill or knowledge." *Id.* at 850 (internal quotation marks and alterations omitted). But 3RC failed to submit any evidence supporting any of these elements.

■ And while the Superior Court did not make findings on the remaining factors in ruling on the injunction — the likelihood of irreparable harm to Boynes Trucking and the public interest — because we agree that 3RC failed to make any showing at all on the first two factors, that omission was harmless under the circumstances. *See* V.I.S.CT.R. 4(i); *In re Q.G.*, 60 V.I. 654, 664 (V.I. 2014) (affirming even where the Superior Court did not consider a motion under the proper standard when the moving party failed to carry his burden of establishing entitlement to relief); *Marco St. Croix, Inc.*, 62 V.I. at 590 n.2 (when the "possibility of success on the merits . . . is essentially zero," no showing on the other factors "can justify issuing a preliminary injunction").

██ 3RC's argument that the Superior Court was required to hold a hearing on the motion regardless of these failings is similarly meritless. In moving for a preliminary injunction, mere allegations are not enough, and a party is required to submit "[e]vidence that goes beyond the . . . allegations of the pleadings and motion papers . . . to support or oppose a motion for a preliminary injunction." *Planned Parenthood League of Mass., Inc. v. Operation Rescue*, 406 Mass. 701, 550 N.E.2d 1361, 1368 (1990) (quoting *Brookline v. Goldstein*, 388 Mass. 443, 447 N.E.2d 641 n.10 (1983)); *see also Marshall Durbin Farms, Inc. v. Nat'l Farmers Org.*, 446 F.2d 353, 357-58 (5th Cir. 1971) (trial courts "have shown appropriate reluctance to issue such orders where the moving party substantiates his side of a factual dispute on information and belief").

██ In going beyond the allegations of the complaint, a party moving for a preliminary injunction typically submits things such as documentary evidence and affidavits "stat[ing] the facts supporting the [moving party's] position clearly and specifically" from those witnesses who would testify at the preliminary-injunction hearing. 11A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE — CIVIL § 2949 (3d ed. 2013). The requirement that this evidence be submitted with the moving papers serves the purpose of giving the nonmoving party notice of what evidence will be presented at the hearing, which is necessary in light of the fact that a preliminary injunction is typically sought at the beginning of the litigation, long before discovery has even started. *See Operation Save Am. v. City of Jackson*, 2012 WY 51, 275 P.3d 438, 455 (2012) ("The grant of a temporary injunction need not await any procedural steps perfecting the pleadings or any other formality attendant upon a full-blown trial of this case.").

██ As a result, where the moving party rests on allegations alone without submitting sufficient supporting evidence with its moving papers, it fails to "present[ ] a colorable factual basis to support [its] claim" for a preliminary injunction, and the Superior Court is not required to hold a hearing on the motion before summarily denying it. *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175-76 (3d Cir. 1990); *see also McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312-13 (11th Cir. 1998) (collecting cases); *accord* SUPER. CT. R. 36(a) ("Oral argument may be requested by the movant on any motion. The [Superior Court], in its discretion, may set the motion for hearing or decide it based upon the submission(s).").

Because 3RC failed to make out anything resembling a viable claim for injunctive relief, we affirm the Superior Court's order summarily denying 3RC's motion for a preliminary injunction.

## IV. CONCLUSION

The Superior Court did not err in denying 3RC's motion for a preliminary injunction without holding a hearing. 3RC failed to make out any plausible claim for injunctive relief because the loss of its investment in the alleged joint venture cannot constitute irreparable injury, since it can be remedied through money damages. Further, the evidence 3RC submitted undermined the allegations it made in its complaint, and therefore 3RC failed to make any showing that it was likely to succeed on the merits. Accordingly, we affirm the Superior Court's January 8, 2015 order denying 3RC's motion for a preliminary injunction.