# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

**THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, RAP 40(D), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.**

# Supreme Court of Kentucky

2025-SC-0347-I

TOBY BERRY, ON BEHALF OF
HIMSELF AND A CERTIFIED CLASS

MOVANT

V.

ON REVIEW FROM COURT OF APPEALS
NO. 2025-CA-0939
FRANKLIN CIRCUIT COURT NO. 25-CI-00193

COMMONWEALTH OF KENTUCKY EX
REL. ATTORNEY GENERAL RUSSELL
COLEMAN; COOKIE CREWS, IN HER
OFFICIAL CAPACITY; AND KENTUCKY
DEPARTMENT OF CORRECTIONS

RESPONDENTS

## OPINION AND ORDER
## GRANTING MOTION FOR INTERLOCUTORY RELIEF, VACATING, AND REMANDING

This matter is before the Court on Toby Berry's motion pursuant to RAP[1] 21(B) and RAP 20(F) to vacate a Court of Appeal's order which granted the Commonwealth's motion to stay proceedings in Franklin Circuit Court while the Court of Appeals addressed the Commonwealth's interlocutory challenge to the circuit court's certification of a class. After review, we grant Berry's motion for relief, vacate the Court of Appeals' order granting the stay, and remand to the Court of Appeals for further proceedings.

---

[1] Rules of Appellate Procedure.

# I. BACKGROUND

Berry, the class representative in these proceedings, entered two negotiated guilty pleas in May 2024 in Franklin Circuit Court. Under the first plea deal he pled guilty to first-degree strangulation, first-degree unlawful imprisonment, and second-degree assault. Under the second plea deal, he pled guilty to first- and second-degree promoting contraband. The Commonwealth recommended that he be sentenced to nine years in the first case and one year in the second to run consecutively for a total of ten years; the circuit court imposed the recommended sentences.

At the time Berry entered his pleas, his conviction for first-degree strangulation did not qualify him for "violent offender" status under the violent offender statute, nor did any of his other convictions. *See* KRS[2] 439.3401 (eff. July 14, 2022, through July 14, 2024). In other words, when he entered his pleas, he would have been parole eligible after serving twenty percent of his sentence rather than the eighty-five percent that is required for violent offenders under KRS 439.3401.

On July 14, 2024, prior to Berry's sentencing, KRS 439.3401 was amended by the enactment of House Bill (HB) 5, colloquially known as the "Safer Kentucky Act." In relevant part, the statute was amended to include first-degree strangulation as an offense that qualified for violent offender

---

[2] Kentucky Revised Statute.

status.  KRS 439.3401(1)(b)14.  In August 2024, after HB 5 went into effect, Berry was sentenced to ten years' imprisonment with parole eligibility after serving twenty percent of his sentence in accordance with his plea deals.

Several weeks after Berry was sentenced, the Kentucky Department of Corrections (DOC) announced that the changes made to KRS 439.3401 pursuant to HB 5 would retroactively apply to defendants like Berry who were sentenced on or after July 14, 2024.  This meant that even if a defendant's convictions did not qualify him for violent offender status at the time he entered a guilty plea or was convicted, if he was sentenced after HB 5 went into effect the DOC would calculate his parole eligibility as being after he served eighty-five percent of his sentence rather than twenty percent.  True to their word, the DOC calculated Berry's parole eligibility at eighty-five percent.

Berry thereafter filed a grievance with the DOC.  It responded on February 17, 2025, that HB 5 required him to serve eighty-five percent of his sentence prior to attaining parole eligibility for his conviction of first-degree strangulation because he was "*sentenced*[3] after 7/14/24."  On February 26, 2025, the Franklin Circuit Court entered an "Agreed Order Regarding Parole Eligibility" that declared:

> IT IS HEREBY ORDERED that the Defendant is eligible for 20% parole eligibility on the offenses in the above styled case that the [DOC] is currently treating as 85% parole eligible. . . The offer from the Commonwealth that was accepted and sentenced via Final Judgment by this Court indicated that the charges would be 20% parole eligible.

---

[3] The word "sentenced" was highlighted in yellow rather than italicized in the DOC's response letter.

3

Despite this order, the DOC refused to change Berry's parole eligibility calculation. He therefore filed for declaratory and injunctive relief in Franklin Circuit Court seeking a declaration that the amendments to KRS 439.3401 created by HB 5 do not apply retroactively to any defendant; a declaration that the DOC is required to impose twenty percent parole eligibility for all offenses which carried twenty percent parole eligibility at the time of the offense, regardless of the sentencing date; and a statewide injunction immediately requiring the DOC to change all sentencing calculated at eighty-five percent due solely to the DOC's interpretation of HB 5 to twenty percent, and to make all affected offenders immediately eligible for placement in certain programs, such as a substance abuse program, if their recalculated parole date makes them eligible for said program.[4] Berry later sought a class action certification after the Commonwealth argued that the circuit court lacked the authority to issue a statewide injunction in the absence of a class action suit. Following a hearing, the circuit court certified the class.

The Commonwealth then appealed the circuit court's class certification to the Court of Appeals pursuant to CR[5] 23.06, which states in full: "An order granting or denying class action certification is appealable within 10 days after the order is entered. An appeal does not stay proceedings in the circuit court

---

[4] Berry explains in his motion that parole eligibility can be affected by completion of certain programs, and that the ability to participate in those programs is dictated by an inmate's parole eligibility date.

[5] Kentucky Rules of Civil Procedure.

4

unless the circuit judge or the Court of Appeals so orders. The matter shall be expedited in the appellate courts." The Commonwealth also filed a motion for intermediate relief under RAP 21(A)(1) with the Court of Appeals to stay the circuit court proceedings on the merits of Berry's claims regarding HB 5 pending the outcome of the Court of Appeals' ruling on the Commonwealth's challenge to the class certification. Berry objected to the stay.

The Court of Appeals granted the stay. Its order noted that CR 23.06 does not provide the standard by which it or a circuit court may grant or deny a motion for a stay. However, both parties agreed that the proper standard was provided in RAP 21(A), which required the Commonwealth to demonstrate that it "will suffer immediate and irreparable injury before final disposition of the appeal[]" if its request for a stay was denied. The court's findings on immediate and irreparable injury were, in their entirety:

> "[N]on-enforcement of a duly-enacted statute constitutes irreparable harm to the public and the government." *Cameron v. EMW Women's Surgical Center, P.S.C.*, 664 S.W.3d 633, 661 (Ky. 2023) (citing *Boone Creek Properties, LLC v. Lexington-Fayette Urban County Bd. of Adjustment*, 442 S.W.3d 36, 40 (Ky. 2014)). "The presumption that statutes are constitutionally passed represents a respect for the General Assembly's authority that the judiciary, as its co-equal branch, must recognize." *Cameron*[, 664 S.W.3d] at 661. Accordingly, Appellant has made a satisfactory showing of irreparable injury.

> With respect to whether the injury is immediate, Appellees state that when the response to the motion for a stay was filed, there were no dispositive motions pending in the underlying circuit court action. However, three days later, on August 11, 2025, Appellees filed a motion in the underlying circuit court action for a judgment in their favor.

5

After the Court of Appeals granted the stay, Berry filed the motion for relief under RAP 21(B) and RAP 20(F) which is now before us.

## II.    ANALYSIS

The Court of Appeals granted the Commonwealth's motion for a stay pursuant to RAP 21(A)(1), which states in relevant part that a party "may move the appellate court for intermediate relief upon a satisfactory showing that otherwise the movant will suffer immediate and irreparable injury before final disposition of the appeal."  RAP 21 further provides that "[a]ny party adversely affected by a decision of the Court of Appeals under this rule may seek review in the Supreme Court under the procedure provided for review of injunctions under RAP 20(F)."  In turn, RAP 20(F)(1) directs that a party that has been adversely affected by an order of the Court of Appeals may "move the Supreme Court to vacate or modify it.  The decision whether to review such an order shall be discretionary with the Supreme Court.  Such a motion will be entertained only for extraordinary cause shown in the motion."

Consequently, Berry must demonstrate extraordinary cause in order to be entitled to the relief he seeks.  CR 65.09(1)[6] was the predecessor to the more recently enacted RAP 20(F)(1).  Our case law discussing CR 65.09(1) recognizes that "the movant faces an 'enormous burden'" in demonstrating extraordinary

---

[6] CR 65.09 was repealed effective January 1, 2023.  Its relevant language was verbatim to that of RAP 20(F)(1).  *See* CR 65.09(1) (eff. March 1, 2020, to December 31, 2022) ("Any party adversely affected by an order of the Court of Appeals. . . may. . . move the Supreme Court to vacate or modify it.  The decision whether to review such order shall be discretionary with the Supreme Court.  Such a motion will be entertained only for extraordinary cause shown in the motion.").

6

cause. *Chesley v. Abbott*, 503 S.W.3d 148, 152 (Ky. 2016) (citing *Courier–Journal, Inc. v. Lawson,* 307 S.W.3d 617, 620 (Ky. 2010) (quoting *Kindred Hospitals. Ltd. P'ship v. Lutrell,* 190 S.W.3d 916, 919 (Ky. 2006)). However, it further acknowledges that "an abuse of discretion by the courts below can constitute extraordinary cause." *Chesley*, 503 S.W.3d at 152 (citing *Nat'l Collegiate Athletic Ass'n v. Lasege*, 53 S.W.3d 77, 84 (Ky. 2001)). A court abuses its discretion when it rules in a manner that is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999).

Berry first argues that the Court of Appeals erred by concluding that the Commonwealth would suffer irreparable injury if it failed to grant the stay. As recounted above, the Court of Appeals' only basis for finding irreparable injury was that the "[n]on-enforcement of a duly-enacted statute constitutes irreparable harm to the public and the government." *EMW,* 664 S.W.3d at 661 (citing *Boone Creek*, 442 S.W.3d at 40). But, in this case, there has been no non-enforcement of a duly enacted statute: Berry's parole eligibility is currently calculated in accordance with how the DOC interprets HB 5's changes to KRS 439.3401. And, more significantly, the circuit court has yet to rule on the merits of the parties' dispute regarding HB 5, and it has not issued an injunction against the enforcement of HB 5 pending its ruling on the merits as the circuit court did in *EMW*. 664 S.W.3d 633 at 640 ("Following a hearing, the Jefferson Circuit Court granted an injunction against the statutes, which prevented [the] . . . Attorney General. . . from enforcing the statutes pending a

7

trial on the merits."). Moreover, even if it had, *Boone Creek* emphasizes that such non-enforcement "creates only a *presumption* of irreparable harm[.]" 442 S.W.3d at 40. It is neither categorical nor automatic as the Court of Appeals' order implies.

Berry also emphasizes that his challenge to HB 5 does not implicate the government's ability to execute its police powers or the General Assembly's prerogative to establish policy. His argument is not that HB 5 is constitutionally infirm or otherwise invalid. Rather, his sole challenge is to whether it can be retroactively applied to defendants sentenced after its enactment date. That argument dovetails into Berry's assertion that the Court of Appeals also erred by concluding that the Commonwealth's non-existent injury was immediate. The court's sole basis for this conclusion was that Berry had *filed* a motion for judgment in his favor on the merits in circuit court, not that the circuit court had *ruled against the Commonwealth* on that motion. And, even if the circuit court ultimately agrees with Berry, no inmate will qualify for early release unless and until the Kentucky Parole Board deems it appropriate.

In addition, the injunctive relief the Commonwealth requested from the Court of Appeals had nothing to do with the proceedings on the merits. The Commonwealth asked that the circuit court be estopped from ruling on the merits of the parties' HB 5 arguments while the Commonwealth's appeal of the class certification plays out in the Court of Appeals. But, ultimately, the circuit court's conclusions about the proper interpretation of HB 5 will be the same

8

regardless of whether the Court of Appeals upholds or reverses its certification of the class. This Court can discern no valid reason why the circuit court should not be permitted to rule on the merits as soon as practicable.

In that vein, Berry emphasizes that although class certification appeals are meant to be expedited, there is no guarantee of a quick decision. He provides several example cases involving a class certification challenge. The first is *Hensley v. Hanes Trucking, LLC*, 549 S.W.3d 430 (Ky. 2018), which was appealed to the Court of Appeals on January 25, 2013, but was not final in this Court until July 6, 2018, a total timeframe of over five years. If the stay remains in place, and if the class certification issue is decided on a timeline similar to *Hensley*'s, both Berry and more than half the current class will have served out their sentence entirely before the merits dispute on the DOC's interpretation of HB 5 is ever decided by the circuit court.

Berry also points out class certification cases with shorter timelines— *Summit Medical Grp., Inc. v. Coleman*, 599 S.W.3d 445 (Ky. App. 2019)(661 days); *Manning v. Liberty Tire Servs. of Ohio*, 577 S.W.3d 102 (Ky. App. 2019)(932 days); *Nebraska All. Realty Co. v. Brewer*, 529 S.W.3d 307 (Ky. App. 2017)(292 days); *United Propane Gas, Inc. v. Purcell*, 533 S.W.3d 199 (Ky. App. 2017)(522 days)—and argues that even under a shorter average timeframe, which he calculates to be on or after March 27, 2027, eighty six percent of the class will see their original twenty percent eligibility date come and go without decision on the merits. In other words, if the stay remains in place the primary

9

issue in this case will effectively be decided before the merits can ever be reached.

In Berry's case and, presumably, in the cases of the other members of the class, Berry and the Commonwealth entered into a plea agreement, which the circuit court accepted, with the understanding that he would not be classified as a violent offender and that he would be parole eligible after serving twenty percent of his sentence. The DOC has since *sua sponte* classified him as a violent offender and recalculated his parole eligibility to be at eighty-five percent, even after the circuit court entered an agreed order that his parole eligibility be calculated at twenty percent. Such a situation calls for a decision on the merits as soon as possible.

Based on the foregoing, we conclude that the Court of Appeals abused its discretion in determining that the Commonwealth will suffer immediate and irreparable injury if the proceedings in circuit court on the merits of Berry's challenge to the DOC's interpretation of HB 5 are not stayed pending the outcome of the Court of Appeals' ruling on the Commonwealth's appeal of the certification of the class. Berry has accordingly demonstrated extraordinary cause warranting the relief he seeks pursuant to RAP 21(B) and RAP 20(F)(1).

### III.   ORDER

Berry's motion for relief under RAP 21(B) and RAP 20(F)(1) is hereby GRANTED. The Court of Appeals' August 13, 2025, order granting the Commonwealth's request for a stay of proceedings pursuant to CR 23.06 is hereby VACATED, and this case is REMANDED to the Court of Appeals for

10

further proceedings on the Commonwealth's appeal of the Franklin Circuit Court's class certification.

All sitting. All concur.

ENTERED: OCTOBER 23, 2025

_____
CHIEF JUSTICE

11